# United States Court of Appeals
## For the First Circuit

No. 14-1047

ÁNGELA RIVERA-CARRASQUILLO; JOSÉ HERNÁNDEZ-QUIÑONES; CONJUGAL PARTNERSHIP HERNÁNDEZ-RIVERA,

Plaintiffs, Appellees,

v.

CENTRO ECUESTRE MADRIGAL, INC., d/b/a Hacienda Madrigal; INTEGRAND ASSURANCE COMPANY; PASIÓN ECUESTRE, INC.; GERARDO CALDERÓN-LOZANO,

Defendants, Appellants,

FLORENCIO BERRÍOS-CASTRODAD; IRMA SARA CASILLAS; AGRO MONTELLANO, INC., CRIADERO LA GLORIA, INC.; EDGARDO VÉLEZ; RESTAURANTE EL ESTRIBO; CONJUGAL PARTNERSHIP BERRÍOS-CASILLAS,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Lynch, and Thompson,
Circuit Judges.

Eduardo Cobian-Roig, with whom José R. Dávila-Acevedo and Cobian & Bonilla, P.S.C., were on brief, for appellants.
José L. Ubarri, with whom David W. Román and Ubarri & Román Law Office were on brief, for appellees.

January 25, 2016

**THOMPSON**, **Circuit Judge**.  Spending time astride an animal as magnificent, spirited, and powerful as a horse can be risky business.  Unfortunately, Ángela Rivera-Carrasquillo experienced this first-hand when she was thrown from a horse in the midst of a guided ride she and her husband, José Hernández-Quiñones, were taking at a ranch outside San Juan, Puerto Rico.

Rivera suffered some pretty significant injuries in her fall, so she and her husband[1] filed suit, and they ultimately secured a jury verdict in their favor at the Puerto Rico federal district court.  In this Court, the appealing defendants say the district court erred in refusing either to grant them judgment as a matter of law or, failing that, to submit the question of whether the plaintiffs' suit is time-barred to the jury.  They also argue that certain parties may not be held liable for the negligence of the company who rented the horse to Rivera and put on the tour.

After careful review of the at-times-confusing trial record and counsels' appellate arguments, we are unable to discern the district court's reasons for its rulings.  Because "we deem this a case where we feel we need the reasoning of the district court," Anderson v. Boston Sch. Comm., 105 F.3d 762, 764 (1st Cir. 1997), we remand for the district court to explain its decision

---

[1] Since we are focused on what happened at trial, we'll simply call them the "plaintiffs."  Similarly, we'll refer to any party that was a defendant in the district court as a defendant here.

with respect to the statute of limitations defense and articulate the ground(s) on which two of the defendants are liable for Rivera's injuries.  And given our inability to parse what happened below from the limited record submitted on appeal (which keeps us from figuring out exactly what we should be reviewing and what standard of review we should apply), we necessarily explain in considerable detail just why we think remand is necessary.

### STATUTE OF LIMITATIONS OVERVIEW

We readily acknowledge that, ordinarily, it makes the most sense to begin our discussion by describing what happened and how this case got here.  But this particular appeal hinges, to a large degree, on when Puerto Rico's statute of limitations began ticking on the plaintiffs' claims.  And the parties, unsurprisingly, have different views about this.  None of their arguments will make sense -- and the reader won't know what's important in our discussion of the facts underlying this case -- unless we start with a general overview of Puerto Rico's statute of limitations.

Puerto Rico's statute of limitations[2] for tort actions like this one is one year.  P.R. Laws Ann. tit. 31, § 5298(a)(2).

---

[2] Because this is a diversity case, Puerto Rico's substantive law controls.  See Alejandro-Ortiz v. P.R. Elec. Power Auth., 756 F.3d 23, 26-27 (1st Cir. 2014) (recognizing that Puerto Rico's statute of limitations "is a substantive and not a procedural matter," and so we must apply it in diversity cases).

A claim filed after time runs out is barred, regardless of its merit. Much of the controversy here revolves around exactly <u>when</u> that one-year period began.

The one-year clock begins ticking "from the time the aggrieved person had knowledge" of the existence of her claim. <u>Id.</u>; <u>see</u> <u>also</u> <u>Rodríguez-Surís</u> v. <u>Montesinos</u>, 123 F.3d 10, 13 (1st Cir. 1997). To have "knowledge" that she has a claim -- thereby triggering the countdown -- a person needs to be aware not only that she has been injured, she also needs to know who is (or may be) responsible for that injury. <u>See</u> <u>Rodríguez-Surís</u>, 123 F.3d at 13-14 (recognizing that a plaintiff must have an "awareness of the existence of an injury" and knowledge of the injury's "author" before the statute of limitations begins to run).

Puerto Rico's Supreme Court recognizes two types of "knowledge" as sufficient to start the clock. First, a plaintiff may have "actual knowledge of both the injury and of the identity of the person who caused it." <u>Alejandro-Ortiz</u>, 756 F.3d at 27; <u>see</u> <u>also</u> <u>Rodríguez-Surís</u>, 123 F.3d at 13-14. The one-year period begins to run on the date a plaintiff gains this knowledge. <u>See</u> <u>Alejandro-Ortiz</u>, 756 F.3d at 27.

Alternatively, a plaintiff "is deemed to be on notice of her cause of action if she is aware of certain facts that, with the exercise of due diligence, should lead her to acquire actual knowledge of her cause of action." <u>Id.</u> at 27. The test for this

- 5 -

so-called "deemed knowledge" is an objective one.  Id.  Under Puerto Rico law, deemed knowledge "is essentially parlance for the discovery rule, which stands for the proposition that '[t]he one-year [statute of limitations] does not begin to run until the plaintiff possesses, or with due diligence would possess, information sufficient to permit suit.'"  Id. (alterations in original) (quoting Villarini-García v. Hosp. Del Maestro, Inc., 8 F.3d 81, 84 (1st Cir. 1993)).  In other words, the statute of limitations begins running at the time a reasonably diligent person would discover sufficient facts to allow her to realize that she'd been injured and to identify the party responsible for that injury. The rationale being, of course, that once a plaintiff comes into such knowledge, she can file suit against the tortfeasor.[3]

Determining the date on which a diligent plaintiff would have learned enough to allow her to file suit presents a question of fact that may be submitted to the jury in an appropriate case. Espada v. Lugo, 312 F.3d 1, 4-5 (1st Cir. 2002) (concluding from

---

[3] The Puerto Rico Supreme Court has recognized an exception to a plaintiff's actual or deemed knowledge triggering the one-year limitations period: "[w]here the tortfeasor, by way of assurances and representations, persuades the plaintiff to refrain from filing suit, or otherwise conceals from the plaintiff the facts necessary for her to acquire knowledge, the statute of limitations will be tolled."  Alejandro-Ortiz, 756 F.3d at 27 (citing Rodríguez-Surís, 123 F.3d at 16).  It is, however, "only the assurances of the tortfeasor, and not those of a third party," that can lead to such tolling.  Id. at 29.  Neither party invokes this principle of Puerto Rico law, so we need not mention it again.

- 6 -

the evidence in the record that a jury could properly find the plaintiff had been diligent in investigating the cause of her injury); Villarini-García, 8 F.3d at 86 ("[W]hether a plaintiff has exercised reasonable diligence is usually a jury question." (quoting Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991))); see also id. at 87 ("[E]ven where no raw facts are in dispute, the issues of due diligence and adequate knowledge are still ones for the jury so long as the outcome is within the range where reasonable men and women can differ.").

Generally speaking, the statute of limitations is an affirmative defense with the defendant bearing the burden of establishing that a claim against it is time-barred. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez, 659 F.3d 42, 50 n.10 (1st Cir. 2011). But a plaintiff who, like Rivera, sues more than one year after the date of injury "bears the burden of proving that she lacked the requisite 'knowledge' at the relevant times." Alejandro-Ortiz, 756 F.3d at 27 (quoting Hodge v. Parke Davis & Co., 833 F.2d 6, 7 (1st Cir. 1987)). Put a little differently, to avoid having her claim barred as untimely, the plaintiff must show (perhaps by convincing a jury) that despite her diligence in pursuing her legal rights, she did not gain enough knowledge to bring suit until sometime after the date of her injury. Such a showing will result

in the one-year clock beginning to tick on some date after the injury.[4]

With these basic principles in hand, we now turn to what happened to Rivera and the facts relevant to when the statute of limitations began to run.  Except for a couple instances (which we'll point out as we go along), these facts are not contested. Rather, their legal consequence is what's at stake.

## BACKGROUND

### 1. The Accident and the Ranch

Rivera was hurt on July 4, 2009, when she was thrown from a rented horse she was riding as part of a guided tour on

---

[4] Because our summary of Puerto Rico's statute of limitations law is sufficient for us to decide the appeal before us, we have not given an exhaustive description of it.  Indeed, Puerto Rico law sets forth several other mechanisms by which the one-year period may be tolled, and we address these only to the extent necessary to decide this appeal.  We also note that, according to a certified translation of a Puerto Rico Supreme Court opinion submitted by the parties, approximately two months before the plaintiffs filed their complaint in the federal district court, the Puerto Rico Supreme Court overruled longstanding state law that automatically tolled the statute of limitations against all joint tortfeasors provided that suit was timely brought against at least one of them.  See Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (P.R. 2012).  (And we note that since "Puerto Rico is a state for diversity-jurisdiction purposes," Rodríguez v. Señor Frog's de la Isla, Inc., 642 F.3d 28, 32 (1st Cir. 2011), our reference to "state law" is appropriate in this diversity case.) According to the parties' certified translation, henceforth "the statute of limitations must be tolled separately for each joint tortfeasor," in light of the Puerto Rico Supreme Court's holding that "the timely filing of a complaint against an alleged joint tortfeasor does not toll the statute of limitations against the rest of the alleged joint tortfeasors."  Fraguada Bonilla, 186 D.P.R. at 389 (certified translation at 8).

property owned by Florencio Berríos ("Berríos"). Berríos used the land as a ranch, or farm, which he operated through his own corporation, Centro Ecuestre Madrigal, Inc. ("Madrigal, Inc.").[5] But, as it turns out, Madrigal, Inc. did not own the horse Rivera was riding, nor did it (or any of its employees) own the horse-rental business or conduct the tour she'd been on. Rather, a completely separate company owned by Gerardo Calderón ("Calderón") -- Pasión Ecuestre, Inc. ("Pasión") -- owned the horse Rivera rented, and it put on the tour as part of its horse rental business conducted from Berríos's property.

Pasión operated its business pursuant to a five-year lease (effective June 15, 2007 through June 13, 2012) with Madrigal, Inc.[6] The lease indicated that Pasión was allowed to use Madrigal, Inc.'s premises to "keep its saddle horses for rent by the general public." In addition to payment of monthly rent, the lease stipulated that "[a]ll liability waivers used by [Pasión] when renting horses must clearly and precisely state that [Madrigal, Inc.] has no relationship with or obligation to

---

[5] Madrigal, Inc. used the name "Hacienda Madrigal" as its "doing business as" identity. To keep things clear, we'll simply refer to the business as Madrigal, Inc.

[6] With respect to that lease, Madrigal, Inc. was "represented by its President, [Berríos]," who signed on the corporation's behalf. The lease does not indicate that Berríos signed in his personal capacity.

[Pasión], and furthermore that [Madrigal, Inc.] is released from any liability to [Pasión's] customers."

Rivera had gone to the ranch with her husband and a family friend after seeing advertisements for horse riding at Madrigal, Inc.'s farm.  This friend apparently wanted the outing to be his treat, and so he paid for it on his credit card.  Before setting out on her ride, Rivera signed a written liability release ("Release") agreeing that neither Madrigal, Inc. nor Pasión would be liable in the event she suffered any injury.[7]

Two of Pasión's employees acted as the group's guides. One rode at the front to lead the way, and the other brought up the rear.  At some point during the ride, the rear guide rode quickly from the back to the front of the line.  In doing so, he

---

[7] The document purported to serve as a release of all claims against more than just these two companies, as it also listed their "officers, directors, managers, agents and representatives in their individual and corporate capacities."  Here's the legalese:

> I, Angela Rivera, of legal age, on my own behalf and on behalf of any conjugal partnership, freely, consciously and voluntarily release Hacienda Madrigal, Centro Ecuestre Madrigal, Inc., Pasión Ecuestre, Inc. and its officers, directors, managers, agents and representatives in their individual and corporate capacities and their successors and subsidiaries, fully and absolutely from any liability directly or indirectly related to recreational or any other kind of activities carried out, sponsored, held, performed or promoted in any way by myself or any minor in my care at Hacienda Madrigal . . . .

- 10 -

passed close to Rivera's horse, which spooked.  Rivera was thrown from her horse after she proved unable to maintain control of the animal.

This appeal, at least with respect to Pasión (and to a lesser extent, Calderón), is not primarily about the jury's finding of liability.[8]  The parties, rather, have focused on Pasión's and Calderón's claims that Rivera failed to sue the right parties in time and, therefore, the statute of limitations bars her and her husband's claims.  So before going further, we need to discuss what else was going on at Madrigal, Inc.'s property in 2009 and lay out the cast of characters important to the legal analysis to come.

On the date of Rivera's fall, Pasión was not the only horse-based business at Madrigal, Inc.'s property.  A second corporation, Criadero La Gloria (owned and operated by Edgardo Vélez ("Vélez")), leased land and 108 stables there.  Criadero La Gloria provided boarding services for off-property horse owners.  Its clients would come to Madrigal, Inc. to ride their horses and use the ranch's facilities.  Like Pasión, this company conducted

---

[8] Madrigal, Inc. and Calderón do raise arguments that they are separate and distinct from Pasión and, therefore, are not liable for the negligence of Pasión's employees.  Since the majority of the parties' arguments on appeal focus on the statute of limitations issue, we'll deal with that first.  Once we take care of that, we'll circle back and get into these other grounds of appeal.

business pursuant to a lease. The parties to this lease, dated June 1, 2009, were Vélez, Criadero La Gloria, Berríos (the property owner), and another of Berríos's companies, Agro Montellano, Inc.[9] The lease indicated that Criadero La Gloria was leasing the land and stables (along with some other facilities) in order to "[m]anage a stable leasing business for horses."

Thus, when Rivera took her tumble on July 4, 2009, Criadero La Gloria's horse boarding business had no interest at all in Pasión's horseback rental business. Also, since Pasión owned its own horses, Pasión did not rent out any of the ones boarded in Criadero La Gloria's 108 stables.

In the late summer or early fall of 2009, Calderón figured out that Pasión could no longer afford to stay in business because it was costing him more money to feed his horses than he was bringing in. So, and with Berríos's approval, Calderón offered to sell his horse renting and touring business to Vélez. Vélez agreed, and by the end of November 2009 the transaction was complete.

To further complicate things, on July 4, 2009, Madrigal, Inc. had a non-horse-based business operating on the premises. Restaurante El Estribo (which was separate from Madrigal, Inc., Pasión, and Criadero La Gloria), operated a restaurant there. And

_____

[9] Similar to Madrigal, Inc.'s lease with Pasión, Berríos signed this one as Agro Montellano, Inc.'s "Executive President."

there's yet another company we have to identify, Integrand Assurance Company. Integrand wrote a single general liability policy that covered Madrigal, Inc., Pasión, and Criadero La Gloria, and which was effective on the date of Rivera's accident. Berríos, through Madrigal, Inc. paid for the policy, and the other corporations operating at Madrigal, Inc.'s property reimbursed him for their share of the premium.

Ultimately, the plaintiffs brought suit against all of the individuals and companies we have just mentioned, but they did not sue them all right off the bat. The travel of this case through the state and federal court systems is critical to our analysis of the parties' statute of limitations arguments. Thus, we must give special attention to the dates on which various parties were brought into the litigation. Our rundown is based on testimony and exhibits introduced at trial, as the statute of limitations was a hotly-contested issue there, and each side called witnesses and introduced evidence speaking to it.

### 2. State Court Proceedings

The plaintiffs retained Attorney Francisco Torres Díaz ("Attorney Díaz") to represent them. On June 11, 2010, within the one-year statute of limitations, the plaintiffs initially filed suit in Puerto Rico state court against Berríos and Madrigal, Inc. -- the two parties Attorney Díaz had identified in his research as being potentially liable. Rivera made a personal injury claim,

- 13 -

while her husband's was for loss of consortium.[10]   Berríos's personal lawyer, Yesenia Ramos Talavera ("Attorney Ramos"), initially defended both Berríos and Madrigal, Inc. in state court.

The plaintiffs served written interrogatories on January 1, 2011.  Several were geared towards identifying the name of the individual that owned the horseback riding business operated on Madrigal, Inc.'s property.  Others sought disclosure of the nature of the relationship between the horseback riding business and Madrigal, Inc.

In early February of 2011 -- before the defendants answered the interrogatories -- the parties then in the case (plaintiffs Rivera and her husband Hernández, and defendants Berríos and Madrigal, Inc.) jointly filed in Puerto Rico superior court a document known as a Case Management Report ("Report"). This Report is made in accordance with Rule 37.1 of Puerto Rico's Rules of Civil Procedure which, the parties tell us, is the "local law equivalent" of Fed. R. Civ. P. 16.  The Report essentially set forth a joint discovery plan, and was signed by Attorney Ramos as

_____

[10] The parties have not included a copy of the actual state court complaint in their joint appendix.  As such, our description of it is based on the parties' representations rather than a review of the document itself.

- 14 -

counsel for Berríos and Madrigal, Inc., and Attorney Díaz for the plaintiffs.[11]

The Report described the discovery <u>still to be completed</u>, identified particular documents required by each side as part of its case, and named various individuals the parties anticipated deposing. The Report indicated the answers to the plaintiffs' interrogatories remained outstanding. It also represented that the lease agreement "[b]etween Defendants and the horse rental operator" was "in possession of the [d]efendants" and that the deadline to deliver it to the plaintiffs was April 11, 2011. The defendants did not, however, specifically identify Calderón or Pasión as the horse rental operator in Report.

Attorney Ramos served her clients' answers to the plaintiffs' interrogatories on March 7, 2011. Berríos had answered them and signed in his "personal capacity and as president of" Madrigal, Inc. The answers twice identified "Gerardo Calderón" as the owner of the horse rental business. Berríos further stated there was a lease agreement between Madrigal, Inc. and Calderón's business, and that he'd attached a copy of it to the answers.[12]

---

[11] In this regard, the Report appears to be a close analog to the written discovery plan described in Fed. R. Civ. P. 26(f).

[12] This representation led to a dispute at trial, which we will discuss in more detail later. For now, it's enough to know that the defendants insisted they'd produced the lease between Madrigal, Inc. and Pasión in effect on the date of Rivera's accident, while the plaintiffs maintained that what was actually

- 15 -

The written answer did not, however, specifically mention the name of Calderón's business (Pasión), and it further stated that Berríos did not know Calderón's address.

The plaintiffs amended their state court complaint on August 30, 2011 to add Madrigal, Inc.'s and Berríos's liability insurer, Integrand, as an additional defendant.[13] The amended complaint did not assert any claims against Pasión, Calderón, Vélez, or Criadero La Gloria. At some point after the insurance company was added, Berríos's personal lawyer, Attorney Ramos, withdrew and new defense counsel, Eduardo Cobian-Roig ("Attorney Cobian") entered.

Discovery continued, and the plaintiffs deposed Berríos in October 2011. Attorney Cobian represented the defendants at the deposition. Berríos testified -- using the present tense -- that Vélez, through his company Criadero La Gloria, rents the stables at Madrigal, Inc.'s ranch. When plaintiffs' counsel asked Berríos, "Who is the owner of Centro Ecuestre Madrigal, Inc.?"

_____

attached was a copy of the lease between Agro Montellano, Inc. (another of Berríos's corporations) and Criadero La Gloria, executed by Vélez. Assuming the plaintiffs are correct, from all that appears in the record they made no attempt to follow up with Attorney Ramos about why she had produced a contract that did not so much as mention Calderón.

[13] Remember, under the then-existing law, the timely filing of a complaint against one joint tortfeasor automatically tolled the statute of limitations with respect to all other joint tortfeasors. See n.4, supra.

Berríos answered (incorrectly, we might add): "Centro Ecuestre Madrigal Inc. That was operated before um . . . Gerardo Calderón."[14] Plaintiffs' counsel did not pose any follow-up questions about Calderón's involvement at the property, nor did he inquire who Calderón is or ask about the timeframe during which Calderón had a business relationship with Madrigal, Inc.

A little later in his deposition, Berríos testified (again incorrectly) that Criadero La Gloria operated the horse rental business on the date of Rivera's accident. This statement, the parties now agree, was incorrect -- on July 4, 2009, Vélez's Criadero La Gloria operated the boarding business, while Calderón's company Pasión ran the horse rental business. Yet, no one appears to have picked up on this error at the time it was made.

Calderón's name came up one more time at the October 2011 deposition. Although the context of how this came about isn't quite clear, it seems that plaintiffs' counsel (Attorney Díaz) was offhandedly telling Berríos about a time when he himself had gone to Madrigal, Inc. to ride horses and managed to lose a set of car keys. The following exchange took place:

> Q. [by Atty. Díaz] Yes, I lost one of those
> keys there and I learned how much they cost.
> Um . . . Well . . .

---

[14] This question referred to Madrigal, Inc., which no one disputes Berríos himself owned.

A. [by Berríos]  I think that was when... when
it was Gerardo.[15]

Q.  No that was before, that was before.

A.  Yes, yes.

Q.  I'm talking about 2006, 2005 back then.

Again, no one asked who Gerardo is or posed any follow-up questions about his involvement on the property.

Thus, at the end of Berríos's deposition, the substance of his testimony regarding two facts was wrong: not only did he say that that Criadero La Gloria (rather than Pasión) operated the horse rental business on July 4, 2009, but he also testified that Gerardo Calderón had run Madrigal, Inc. -- Berríos's own company -- at some point in the past.  The record discloses no effort from anyone on either side to probe any inconsistencies or to clear up either misstatement.

The plaintiffs voluntarily dismissed their complaint without prejudice in April 2012, ostensibly because they had moved to Nebraska.  As non-residents of Puerto Rico, if they continued to litigate in state court, the plaintiffs could have been required to put up a bond to pay costs should they lose the case.  They did not join (or seek to join) Calderón, Pasión, Criadero La Gloria, or Vélez before dismissing the state court complaint.

---

[15] Recall that Gerardo is Calderón's first name.

### 3. The Federal Case

On October 11, 2012, almost exactly one year after Berríos's deposition and six months after they dismissed their state court complaint, the plaintiffs filed a personal injury action grounded on diversity in the federal district court in Puerto Rico.[16] The federal complaint contained the same substantive allegations from state court, but it brought in a few new defendants. In total, the named defendants were Berríos; his wife Irma Sara Casillas ("Casillas"); the "conjugal partnership composed by" Berríos and Casillas; Madrigal, Inc.; Agro Montellano, Inc.; Criadero La Gloria; Vélez; and Integrand. The plaintiffs amended their complaint as-of-right fewer than twenty-one days later, see Fed. R. Civ. P. 15(a)(1) (describing when a party may amend its pleading without leave of court), but still did not assert claims against Calderón or Pasión. And along with the change in court came a change in plaintiffs' counsel, with

---

[16] The original defendants -- Berríos and Madrigal, Inc. -- do not contend that the statute of limitations bars the federal complaint against them. This is because Puerto Rico law contains a "restart rule" that gives a plaintiff one year from the date of a dismissal without prejudice to re-file an action against any and all defendants that had been timely joined. Rodríguez v. Suzuki Motor Corp., 570 F.3d 402, 408 (1st Cir. 2009) ("The usual rule under Puerto Rico law is that the filing of a judicial action tolls that statute of limitations and, if the action is dismissed without prejudice, the limitations period is reset and starts to run again from that date."). As we noted earlier, the initial state court complaint against Berríos and Madrigal, Inc. was timely.

Attorney José Ubarri ("Attorney Ubarri") taking over from Attorney Díaz. Attorney Cobian continued to represent all the named defendants in federal court.[17]

Pursuant to Federal Rule of Civil Procedure 26(a)(1), the defendants served their Initial Disclosures on January 30, 2013. In accordance with that Rule, the defendants were required to disclose the name "of each individual likely to have discoverable information -- along with the subjects of that information -- that the [defendants] may use to support [their] claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i).

The defendants' response included the following: "Gerardo Calderón Lozano -- Owner and administrator of the horseback riding business in Hacienda Madrigal, at the time of the incident alleged in the complaint." The defendants also indicated they would rely on the lease agreement between Madrigal, Inc. and Pasión to support their defenses. It was at this time, the plaintiffs claim, that the defendants first produced Pasión's lease and first identified Calderón as the owner of the horse rental business.

Two weeks later, on February 15, 2013, the plaintiffs moved for leave to file a Second Amended Complaint. This time

---

[17] Attorneys Ubarri and Cobian also represent the parties in this appeal.

they wanted to name Pasión and Calderón as additional defendants.[18] The plaintiffs did not make any argument in their motion geared specifically towards tolling the one-year statute of limitations. Instead, they said they'd been unaware of Calderón's ownership of the horseback riding business and of the contract between Madrigal, Inc. and Pasión until the defendants served their Rule 26(a)(1) disclosures.

The existing defendants had until March 4 to file an objection to the plaintiffs' motion to amend. But we do not know whether or how they would have responded to that motion because the district judge, by a docket order and without explanation, allowed the motion to amend on February 22, 2013.

Thereafter, the plaintiffs filed their Second Amended Complaint ("Complaint") on February 25, 2013. The Complaint appears to reflect some continuing uncertainty on the plaintiffs' part about just who had put on the horseback riding tour. For example, the Complaint alleges that Calderón, "along with Pasión Ecuestre, and/or El Estribo [the restaurant] and/or Edgardo Vélez and/or Criadero La Gloria operated the horseback riding business at Hacienda Madrigal under an agreement with [Berríos] and [Agro Montellano, Inc.]." The Complaint went on to allege that Pasión (along with all these other defendants) negligently caused

---

[18] They also sought to add the restaurant operating on Madrigal, Inc.'s property, Restaurante El Estribo, Inc.

- 21 -

Rivera's injuries through failing to properly select, train, and supervise the tour guides. The Complaint also set forth a strict liability theory against Madrigal, Inc., Calderón, and Pasión pursuant to Article 1805 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5144.[19]

February 25, 2013, the day Calderón and Pasión were first brought into the case, is more than three-and-a-half years after Rivera's July 4, 2009 injury. This posed a potential problem for the plaintiffs' claims against them in light of the one-year statute of limitations. Indeed, Calderón and Pasión soon sought summary judgment for exactly that reason. They argued the case should not go to a jury because the plaintiffs' claims are time-barred and that the limitations period cannot be tolled because the plaintiffs failed to diligently work to learn the identity and importance of Calderón and Pasión.

The district judge denied the motion in a brief written order. He stated first that "[e]vidence concerning the name and identity of the correct parties was not made apparent until October 2012." So, the judge ruled, the plaintiffs' February 2013 "motion

---

[19] This section provides, "[t]he possessor of an animal, or the one who uses the same, is liable for the damages it may cause, even when said animal should escape from him or stray. This liability shall cease only in case the damage should arise from force majeure or from the fault of the person who may have suffered it." P.R. Laws Ann. tit. 31, § 5144.

to join Pasión Ecuestre as a party has occurred within one year of that time and is well taken." The judge went on, stating that summary judgment would be denied because "[d]isputed material facts remain concerning the responsibility and role of each defendant in this case."

The defendants filed a motion for reconsideration, which the district judge denied. He wrote in another short order that he denied the "original [summary judgment] motion because the plaintiffs will have an opportunity at trial to present evidence of their diligence." At this point in the case, the district judge evidently viewed the statute of limitations issue as presenting a jury question.

### 4. Trial

Not surprisingly, Madrigal, Inc.'s and Calderón's statute of limitations defense was a hotly-contested issue at trial. Aware of their burden to demonstrate grounds for tolling the limitations period, the plaintiffs put on evidence of their own diligence in seeking to identify and sue Pasión and Calderón.

First up was Rivera's husband, Hernández. In addition to testifying about how the accident occurred, he told the jury about their efforts to identify and sue Pasión and Calderón. He testified that after he and his wife filed their lawsuit in state court, the initial defendants (Berríos and Madrigal, Inc.) questioned whether he or his wife had even been on the premises on

July 4, 2009. So Hernández asked his friend, who had paid for the ride, to give him a copy of a receipt for that day. Hernández's friend ended up emailing him a copy of a credit card statement showing "the date that indicated we had been there" [i.e., Madrigal, Inc.'s ranch] and the charge for the horse rental. Per Hernández, the statement showed the "name" of the company that put on the ride, but he didn't recall it any longer.[20]

The plaintiffs called Berríos as part of their case in chief. He testified that Madrigal, Inc. has become well-known, such that "[e]verybody that goes horseback riding says, let's go to Hacienda Madrigal," rather than to Pasión or Criadero La Gloria. Berríos told the jury that back in July of 2009, Calderón owned the rental business and operated it under the Pasión name, while at the time of trial it was being run by Vélez through Criadero La Gloria. Berríos agreed that both Calderón and Vélez "us[ed] the name Hacienda Madrigal to promote their horse rental operation[s]." He also testified that he obtained insurance for Madrigal, Inc. and had Pasión and Criadero La Gloria named as insured entities on the policy, and that each company would pay him its corresponding share of the policy premium.

---

[20] A copy of the credit card statement (which the defendants submitted in connection with their summary judgment motion) shows a July 4, 2009 transaction with Pasión.

The plaintiffs then called Attorney Díaz, the lawyer who had represented them in state court. Díaz testified about the steps he took to identify potential defendants before he filed the complaint. He figured out that the farm's name was Madrigal, Inc. and that it was owned by Berríos, so he filed the state court complaint against those two. After filing the complaint, he served interrogatories on the defendants, but the answers made no mention of Pasión or, for that matter, Criadero La Gloria. He did admit, however, that the defendants identified Calderón as someone that may have knowledge of facts relevant to the complaint. Nevertheless, he said that the defendants attached to their answers a copy of the June 1, 2009 contract between Agro Montellano, Inc. and Criadero La Gloria. Per his testimony, the defendants never produced to him a copy of the contract between Madrigal, Inc. and Pasión for the horseback riding business.

In the middle of Attorney Díaz's testimony, the judge announced that the court would recess for lunch. After sending the jury out, he had the following exchange with the attorneys:

> The Court: Counsel, don't go, because I want to discuss something here. It is pretty obvious to me, it is pretty obvious to me that the answers to those interrogatories fail to disclose extremely important information that was in the hands of defendants.
>
> [Plaintiffs' Counsel]: I'm sorry, Your Honor?
>
> The Court: Those answers, from what I've heard up to now . . . fail to disclose

- 25 -

extremely important information that was known to defendants . . . . Whether it was on account of bad faith, . . . negligence, whether it was that the lawyer [Attorney Ramos] did not do her job correctly in figuring out the answers, whether it was that the Cobian law firm did not procure any additional information, I don't know and I don't care.

But I'm telling you right now that the way this looks up to now, you have no Statute of Limitations defense. Is that clear?

[Defense Counsel]: It's clear, Your Honor.

The Court: Because I'm not going to allow that here. Is that clear?

[Defense Counsel]: Well --

The Court: If you mess around with the truth in the answer to interrogatory, you pay the consequence. The consequence is that the Complaint may be filed in time. Okay.

In response, defense counsel indicated the defendants' state court lawyer, Attorney Ramos, would testify that she personally delivered a copy of the Madrigal, Inc.-Pasión contract to plaintiffs' counsel before answering the complaint, and then later attached a copy of that contract to her clients' answers to interrogatories. The district judge's view, though, was that the defendants' answers should have explicitly stated that Calderón "is related to a corporation known as Pasión Ecuestre, Inc.," but "this information was not disclosed until 2011." The judge said "[t]here must be a consequence when you screw around with answers

- 26 -

to interrogatories," and he warned defense counsel that he was "advancing to [him] what's coming."

After lunch, Attorney Díaz resumed his testimony and described how he asked Berríos at his deposition about who ran the horse rental business. Attorney Díaz told the jury that Berríos indicated -- more than once -- that Criadero La Gloria had been running it when Rivera was injured. Attorney Díaz also denied that the defendants' first lawyer, Attorney Ramos, delivered a copy of the contract between Madrigal, Inc. and Pasión to him. And he further testified that, despite asking for them, he was never given a copy of Pasión's lease or a copy of the Release Rivera signed before going on her ride. Attorney Díaz explained that he did not file suit against Calderón in state court because he was not "certain" who was running the horse rental business in July of 2009, and he did not want to assert claims against anyone who might have no liability for Rivera's injuries.

Once the plaintiffs finished putting on their case in chief, which included the above-described statute of limitations evidence, it was the defendants' turn to present their defense. First, Calderón took the stand and testified that he did run Pasión in July of 2009, but that he sold the entire business to Vélez a few months after Rivera's injury. On cross-examination, he acknowledged that he made use of Madrigal, Inc.'s name, with no objection from Berríos, to promote his business. He did this

because Madrigal, Inc. was well-known while "Pasión Ecuestre was a corporate name that nobody knew."

The defendants also called their lawyer from the state court action, Attorney Ramos. She testified that Berríos was a client for whom she had done "a lot of contracts . . . and corporate law," so she agreed to take on the matter even though she does not handle tort cases. Attorney Ramos told the jury that she personally went to Attorney Díaz's office and delivered a copy of the contract between Madrigal, Inc. and Pasión with the expectation that he would drop the claims against Berríos and Madrigal, Inc. When that didn't happen, Attorney Ramos testified that she again produced a copy of the Pasión contract along with her clients' answers to interrogatories. She explained that she agreed to the wording in the Report stating that the defendants would produce the contract (as opposed to, had already produced it) because she "didn't mind" sending along another copy.

After the close of evidence, defense counsel made a couple of motions to try to get various defendants out of the case.

First, saying that he wanted to "simplify the case for the jury," counsel requested "a judgment as a matter of law dismissing all the defendants that are not the entity Pasión Ecuestre" or the insurance company, Integrand. Counsel did more than just appeal to the judge's sense of practicality: he argued that "it's been established there is no evidence in the record

that relates them" -- meaning defendants other than Pasión and the insurer -- "with the rental business." He urged the court to conclude that there was no legal basis to hold any defendant apart from Pasión liable for Rivera's injuries.

The district judge did not ask the plaintiffs what they thought about the defense motion. Instead, the judge's response was, "I would say that at least the entities that appear in the release are technically speaking involved one way or the other." The Release, recall, listed "Hacienda Madrigal, Centro Ecuestre Madrigal, Inc., Pasión Ecuestre, Inc. and its officers, directors, managers, agents and representatives in their individual and corporate capacities . . . ."

The judge went on to, essentially, opine that it didn't matter which defendants remained in the case. After all, he said, "the truth of the matter is the evidence in this case centers basically upon the horse renting enterprise, and doesn't really matter whether you have one or ten or [twenty] or three [defendants], because it's the same insurance eventually." Thus, "if the jury were to find in favor of plaintiff[s] against any one of them, any one of them, the deep pocket is the insurance company . . . [n]o matter how you look at it." In sum, the judge clearly indicated that he was not inclined to dismiss the claims against Madrigal, Inc., Pasión, and their officers or directors, but that

he would let the other defendants -- with the exception of Integrand -- out.

Defense counsel next focused in on Pasión and said the claims against it should be dismissed because "[t]he case was not brought in one year."  This motion brought the statute of limitations issue to a head.[21]  "There is no way I'm going to do that, and I told you the reasons," was the judge's immediate response.

The judge went on to state that, "without entering into credibility issues" regarding Attorneys Díaz and Ramos, he would instead rely on the (Puerto Rico Superior Court Rule 37.1) Report signed by "[b]oth lawyers" to conclude that the defendants had not produced Pasión's contract at the very beginning of the lawsuit. The judge took the Report's specific wording that the lease would be produced by a specific date as an indication that it had not already been turned over to the plaintiffs.  He further expressed his "view . . . that if Pasión Ecuestre was not included from the beginning, it wasn't because of negligence or because of anything

---

[21] It also ensured that defense counsel had sought judgment as a matter of law for each and every defendant (again, with the exception of Integrand).  With respect to Calderón, technically defense counsel did not invoke a statute of limitations defense and only sought judgement as a matter of law on the grounds that he did not personally operate the horse rental business.  On appeal, however, the plaintiffs do not argue that Calderón waived the statute of limitations defense as a result of defense counsel's failure to explicitly invoke this defense on his behalf when counsel moved for judgment as a matter of law.

of the sort. It was because the looseness, if you will, the tropical nature of the discovery that was created, was done in Superior Court in Caguas, allowed that to happen."

The judge concluded that "[t]here is no question" plaintiffs' counsel had been attempting to identify and locate the proper parties to sue (i.e., Calderón and Pasión), but "the discovery betrayed him in that sense, and he relied on discovery that was improper." The judge made it clear that he would consider no further argument on the matter: "This is it. This is finished. You will not convince me. I already gave you a ruling, and this is it."

After a recess, the judge returned to the defense's first motion for judgment as a matter of law -- the one seeking to dismiss everyone but Pasión -- and asked "[a]re we in agreement that we should give the jury a streamlined case regarding parties?" Defense counsel responded, "Defendants agree, Your Honor,"[22] and the plaintiffs expressed their agreement as well. The court entered a Partial Judgment formally dismissing all claims against Vélez, Berríos, Casillas and the conjugal partnership with Berríos, Agro Montellano, Criadero La Gloria, and Restaurante El

_____

[22] We do not interpret the defendants' agreement with the district court's proposal to "streamline" the case for the jury's convenience as a waiver of any of the substantive defenses and arguments they had just raised.

- 31 -

Estribo.[23]  Accordingly, the only defendants listed on the verdict form were the parties named in the Release Rivera had signed -- Madrigal, Inc., Pasión, and Calderón.

The verdict form the court chose to submit to the jury[24] effectively treated the three remaining defendants as one entity, as it did not differentiate between theories of liability against each.  Instead, it simply asked whether the plaintiffs had proved "that the owner or possessor of the horse is liable," but the jury was not asked to determine which of the three defendants qualified as the "owner or possessor."  And continuing the theme of lumping all three together, the verdict form also asked whether force majeure "absolve[d] the Defendants of liability."[25]

---

[23] The Partial Judgment mistakenly dismissed Integrand, but the parties worked this out after trial by amending the judgement to list Integrand as a liable defendant.

[24] The defendants' proposed jury instructions separated the defendants out and provided for a separate verdict as to each one, but the district judge did not adopt them.

[25] The district judge's written instructions to the jury explained the concept of force majeure in the following way:

> Force majeure means a superior force or event;
> an event that cannot be anticipated or
> controlled.  The term includes both acts of
> nature, like floods or hurricanes, and also
> acts of people.  It means that it becomes
> impossible to predict.  It is the result of an
> event or effect that the parties could not
> have anticipated or controlled.

None of the parties on appeal takes issue with the district court's formulation of force majeure.

- 32 -

Defense counsel took another stab at getting the statute of limitations defense to the jury by asking the district judge to instruct the jury on it. The judge refused, saying "I already decided on the matter of law, Statute of Limitations. So you cannot argue that before the jury." In response to defense counsel's continued attempts to argue for the defense, the judge reiterated his position that "the discovery in this case would have led any reasonable person to be confused who the parties were . . . ." With that, the district judge considered the matter "over."

The jury returned a verdict for the plaintiffs, and the district court entered judgment against Madrigal, Inc., Pasión, and Calderón. Those defendants then filed a post-judgment renewed motion for judgment as a matter of law.[26] Much of the motion rehashed arguments made previously. These defendants once again argued that the uncontroverted evidence demonstrated that only Pasión operated the horse rental business, meaning that neither Madrigal, Inc. nor Calderón could be held liable for the negligence of Pasión's employees. And, like they did prior to and at trial, the defendants argued that the claims against Pasión are barred by the statute of limitations. In a new wrinkle, the defendants also

---

[26] Integrand, though at that point dismissed from the case, joined this motion.

sought to apply the statute of limitations argument to Calderón and Integrand, as their prayer for relief sought dismissal of the "totality of the complaint on statute of limitation[s] grounds." Finally, the defendants told the judge that even if he did not agree that they were entitled to judgment as a matter of law, they should at the very least get a new trial on the statute of limitations issue.[27]

The district judge denied the defendants' renewed motion for judgment as a matter of law in a docket order without explanation. Aggrieved, the defendants filed this timely appeal.

## DISCUSSION

### 1. Pasión, Calderón, and the Statute of Limitations

Calderón and Pasión appeal the district judge's denial of their motion for judgment as a matter of law invoking the statute of limitations.[28] They say the judge decided the issue --

---

[27] The defendants also sought a new trial on a specific point of Puerto Rico's comparative negligence law, but we don't need to get into that as the defendants do not press the issue on appeal.

[28] Integrand argues that it, too, may take advantage of the statute of limitations because it was not brought into the case until two years after Rivera's accident. Integrand, however, fails to acknowledge or address "the Puerto Rico Supreme Court's determination that a suit against an insurer may be filed up to one year after judgment is entered in a suit against the insured." Tokyo Marine and Fire Ins. Co., Ltd. v. Perez & Cia., De Puerto Rico, Inc., 142 F.3d 1, 8 (1st Cir. 1998) (citing Barrientos v. Gobierno De La Capital, 97 D.P.R. 552, 576-77 (P.R. 1969)). Because Integrand acknowledges that it insured each of the defendants against whom judgment was entered, its statute of limitations defense is without merit.

erroneously -- as a matter of law, and their brief extensively engages on this claim of error. The plaintiffs have a very different take on what the judge decided. On this point, they solely argue in their appellate brief that the district judge barred the statute of limitations defense not as a matter of law on the merits of the motion, but as a sanction for the defendants' having gone out of their way to hide the identities of the proper defendants to keep the plaintiffs from suing Pasión and Calderón until long after the statute of limitations had expired.[29]

---

[29] Because the defendants (appellants here) are the ones who took an appeal, they filed the initial brief in this Court in accordance with the Federal Rules of Appellate Procedure. The plaintiffs (appellees here) then filed their own brief, after which the defendants filed a reply brief responding to the plaintiffs' arguments.

The defendants' opening brief was premised (and focused entirely on) the notion that the district judge decided the statute of limitations issue as a matter of law. It did not even raise the possibility that the district judge might have barred the defense as a sanction. In their response brief, the plaintiffs not only said that the district judge sanctioned the defendants, but they also claimed the defendants waived any appellate argument that the sanction was improper since they didn't even mention the issue in their opening brief. According to the plaintiffs, even if the defendants (as they in fact did) used their forthcoming reply brief to discuss the propriety of the sanction, this would be too little too late to overcome the waiver.

We have said that parties in the plaintiffs' position are "entitled to rely on the content of an appellant's brief for the scope of the issues appealed, and [an] appellant generally may not preserve a claim merely by referring to it in a reply brief or at oral argument." Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983); see also Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990) (expressing concern in a situation in which "the appellee is given no fair chance to respond to a theory which emerges for the first time in the appellant's reply

The parties' disagreement about what happened in the district court complicates our work as a reviewing court. And, regrettably, the record does not supply a ready answer: each side's characterization of the judge's actions finds at least some support there.

We start with the plaintiffs' suggestion that the judge struck the defense as a sanction. At the summary judgment stage, the district judge's review of the papers led him to conclude that the defense's success (or lack thereof) was dependent upon the jury's resolution of contested facts. This is an obvious indication that the judge did not believe it was appropriate to resolve the question as a matter of law in light of the expected evidence at trial.

Then, in the midst of trial and immediately after hearing some of the plaintiffs' evidence about how they attempted to identify the right parties to sue (and before the defendants began

---

brief and the court of appeals is left with but one side of a two-sided story").

The defendants' briefing does not offend this principle. As we discuss in detail herein, the record does not make clear whether the district judge imposed a sanction or made a legal ruling when he kept the statute of limitations defense from going to the jury. The plaintiffs, in their appellate brief, are the ones who framed the court's decision as that of a sanction order. The defendants appropriately used their reply brief to challenge this assertion. See Holmes v. Spencer, 685 F.3d 51, 66 (1st Cir. 2012) (recognizing that an appellant's reply brief may be "the earliest point when it [is] logical to" address an argument raised by an appellee in its brief). Accordingly, we decline to make any finding of waiver.

calling their own witnesses), the district judge sent the jury to lunch and instructed the parties to remain in the courtroom. He proceeded to characterize the defendants as having "mess[ed] around with the truth," and "screwed around with answers to interrogatories." The judge informed the defendants that they would "pay the consequence" of their actions and that he was "not going to allow" them to present a statute of limitations defense. He also made it abundantly clear that he thought the defendants were required to specifically identify Pasión in response to the interrogatories served on them in the state court case, and stated it was "pretty obvious" to him that the defendants' answers were inadequate.

We are well-aware of the dangers of trying to glean tone of voice and demeanor from a cold transcript. Nevertheless, the timing and wording of the judge's statements can readily and reasonably be interpreted as evincing his displeasure with the defendants' conduct in discovery based on the evidence put on by the plaintiffs. Moreover, by stating "I'm not going to allow" the defense, the judge was speaking in terms of making a decision within his purview and up to his discretion as a trial judge, as opposed to simply applying Puerto Rico law on tolling to the specific facts of the case. Thus, the record could be read to support the plaintiffs' assertion that upon hearing the evidence,

the judge found that the defendants engaged in discovery misconduct and struck their statute of limitations defense as a sanction.

Yet, the defendants' position that the judge ruled as a matter of law instead of imposing a sanction is not devoid of record support either. First, though the district judge voiced his opinion at trial that Madrigal, Inc.'s and Berríos's interrogatory answers should have identified Pasión by name, the judge never made an explicit, on-the-record finding that any defendant violated a discovery obligation or engaged in misconduct. Indeed, he never uttered the word "sanction" during or after trial. Given the amount of attention paid to this issue both at trial and post-verdict, it would be logical to expect that if the judge had intended to apply a sanction, he would have said so explicitly at some point along the way.

It also bears mentioning that the district judge did not address any of the testimonial discrepancies or make any findings related to the conduct of the trial attorneys' handling of their discovery obligations. And he did not make a finding as to which contract the defendants attached to their answers to interrogatories. Factual findings on these issues, we believe, would likely have been necessary prerequisites to any ultimate finding of bad faith or discovery misconduct.

Moreover, when the judge referenced "loose" discovery practices in Puerto Rico state court, he appears to have been

referring to his perception of the way discovery is generally conducted there, rather than a criticism specific to the defendants or Attorney Ramos.  And he also said the plaintiffs should not be penalized because of the "tropical nature" of state court discovery.  Indeed, he opined that, thanks to "the discovery in this case . . . any reasonable person" would be confused as to who the plaintiffs should have been suing given the multiplicity of individuals and companies providing services at Madrigal, Inc.'s property.  This wording calls to mind not a sanction, but the plaintiffs' success in meeting their burden to establish that they acted as a reasonably diligent person would in order to toll the statute of limitations.

Thus, we do not believe the judge's focus on the parties' mutual confusion and his generalized critique of discovery practices in Puerto Rico state court are necessarily indicative of an intent to sanction the defendants.  On the contrary, the judge explicitly stated after the close of evidence that he had decided "as a matter of law" not to submit the statute of limitations defense to the jury.  This last statement -- especially considering that the judge never said he was sanctioning the defendants -- lends further record support to the defendants' view that the judge made a legal ruling that the statute of limitations should be tolled.

Putting it all together, we simply cannot say with any confidence whether the judge struck the statute of limitations defense as a sanction or ruled on that issue as a matter of law. Coming down either way would require us to emphasize and rely on some of the judge's words, while ignoring and putting to one side others. Guessing at what a district judge intended to do does not strike us as the proper way to go about deciding an appeal.

"As we have observed on several occasions, 'some explication of the trial court's reasoning will often prove valuable to both the litigants and to the reviewing court.'" Francis v. Goodman, 81 F.3d 5, 8 (1st Cir. 1995) (quoting Souza v. Pina, 53 F.3d 423, 424 n.4 (1st Cir. 1995)) (discussing the need to remand given the lack of clarity as to why the district court concluded that exercising diversity jurisdiction was proper). Here, because the record on appeal can be fairly read to support each party's divergent view of what went on at trial, an explanation from the district court is more than valuable, it is essential for us to conduct a meaningful appellate review. This is especially so if the district judge intended to impose a sanction for discovery misconduct. See Figueroa-Ruiz v. Alegria, 905 F.2d 545, 549 (1st Cir. 1990) (holding that a district court is required to articulate why it is imposing a sanction "when the reason for the decision is not obvious or apparent from the record"); see also Navarro-Ayala v. Nunez, 968 F.2d 1421, 1427 n.5

- 40 -

(1st Cir. 1992) (recognizing that a district court's specific findings "help us better understand why a particular sanction has been deemed appropriate in respect to a particular instance of misconduct").

Moreover, a definitive word from the district court will improve the quality of our ultimate decision because it will allow the parties to focus their arguments not on what they think the district court did, but whether or not the trial judge's decision should be affirmed, reversed, or modified.  Thus, "we feel it necessary to remand the case so that the district court may review its decision[]" striking the statute of limitations defense and "make known to us its reasons" for doing so.  Anderson, 105 F.3d at 769.[30]

---

[30] The parties seem to agree that if in fact the district judge sanctioned the defendants, he did so as a result of the defendants' conduct during discovery in Puerto Rico Superior Court.  We are, of course, mindful of the defendants' argument that a federal judge lacks the power to sanction a party for conduct occurring in a state court.  See In re Lothian Oil, Inc., 531 F. App'x 428, 445 (5th Cir. 2013) (observing that a federal court's "inherent power to punish bad-faith conduct does not extend to actions in a separate state court proceeding"); Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 157 n.20 (4th Cir. 2002) (noting that a district judge "lacked authority under the federal rules to sanction [an attorney] for conduct occurring in state court").  We, however, can't tell what (if anything) the district court sanctioned or where, from the judge's perspective, any misconduct occurred.  Accordingly, we note the argument has been raised, but we take no position on its merits and leave it to the district court to sort out (if necessary) in the first instance.

### 2.  Madrigal, Inc. and Calderón

We come now to Madrigal, Inc.'s and Calderón's arguments that they cannot be held liable for Rivera's injuries.

Madrigal, Inc.'s theory, first raised (as best we can tell) in its motion for summary judgment, is that it cannot be liable to the plaintiffs because it is merely a landowner and had nothing to do with the horse rental business.  See CMI v. Munc. of Bayamón, 410 F. Supp. 2d 61, 75 (D.P.R. 2006) ("The imposition of tort liability for the action of a third party arises only under certain exceptional circumstances.").  Calderón, for his part, says in his summary judgment offering that he is legally distinct from his corporation and, therefore, cannot be held personally liable for the negligence of Pasión's employees.  See Burgos-Oquendo v. Caribbean Gulf Refining Corp., 741 F. Supp. 330, 332 (D.P.R. 1990) ("As a general rule, a person is only liable for his own acts or omissions and only by exception is a person liable for the acts or omissions of others.").

Opposing the summary judgment motion, the plaintiffs argued that Madrigal, Inc.'s inclusion on the Release Rivera signed is evidence that the two companies operated the horse rental business together, which makes Madrigal, Inc. liable as a joint venturer.  They further argued that Madrigal, Inc. may be held liable on an apparent authority theory given the evidence adduced in discovery showing that Madrigal, Inc. knowingly allowed Pasión

to utilize Madrigal, Inc.'s better-known name and store of goodwill in the community to attract customers for its horse rental business. See Grajales-Romero v. Am. Airlines, Inc., 194 F.3d 288, 293 (1st Cir. 1999) ("Under Puerto Rico law, an apparent principal may be held liable for the acts of its apparent agent where the apparent principal's actions 'led the plaintiffs to reasonably believe [in its] representation' of authority and control over the apparent agent, through the apparent principal's conduct, including its 'silence, evasive language and appearances.'" (alteration in original) (quoting Berríos v. U.P.R., 16 P.R. Offic. Trans. 112, 122 (1985))). In addition, they argued that Calderón is personally liable for the negligent acts of his corporation's employees because Calderón, as Pasión's principal, operated the horse rental business at the time of Rivera's injury. See P.R. Laws Ann. tit. 31, § 5142 ("Owners or directors of an establishment or enterprise are . . . liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties.").

In denying summary judgment, the district judge succinctly wrote that "[d]isputed material facts remain concerning the responsibility and role of each defendant in this case." And his order on the motion for reconsideration focused solely on the statute of limitations. Clearly then, the judge thought there was

a jury question on at least one of the theories of liability against Madrigal, Inc. and Pasión.

These arguments about Madrigal, Inc. and Pasión did not end with the summary judgment denial. Before trial began, the defendants submitted proposed jury instructions that would have informed the jury they must find Berríos and his corporations (i.e., Madrigal, Inc.) not liable if they had no interest in Pasión other than as a lessor, or if they did not have control separate from that of a landowner over Pasión's activities, or if they did not share profits with Pasión from Pasión's horse rental business.

Then, on the third day of trial, the defendants argued in their oral motion for judgment as a matter of law that the trial evidence proved Pasión was the only defendant that operated the horse rental business and, therefore, the claims against all other defendants should be dismissed. The judge's response, which he made without asking the plaintiffs for their feedback, was to say that any entity listed on the Release (meaning Madrigal, Inc.) was "technically speaking involved" and would stay in the case. He did not, however, explain why he concluded that Madrigal, Inc. could be liable for Pasión's negligence solely by virtue of it having been included on the Release. Neither did he tell the parties why Calderón could be held personally liable.

Before the case went to the jury, the defendants asked the judge to instruct the jury that if they find one defendant

liable, this alone does not mean that all defendants are liable. The defendants also proposed giving the jury a separate verdict form for each defendant in the case. And the proposed form for Madrigal, Inc. would have told the jury that it was not liable unless the jury found that Madrigal, Inc. owned or operated the horse rental business on July 4, 2009.

The judge did not oblige defense counsel's request to separate out the defendants or instruct the jury on different theories of liability. The jury instructions he actually gave treated the remaining defendants (Madrigal, Inc., Calderón, and Pasión) as a single unit, and referred to the three collectively as "Defendants" without elucidating separate theories of liability against each. Ditto with the verdict form, which simply asked whether the plaintiffs had "prove[d] that the owner or possessor of the horse is liable for the damages caused by it."

Post-verdict, the defendants' renewed motion for judgment as a matter of law argued that neither Madrigal, Inc. nor Calderón can be held liable because they "are separate and distinct entities from Pasión." They argued that none of the trial evidence tended to show that Madrigal, Inc. was responsible for the horseback riding business. Furthermore, the defendants said there was no evidence to support piercing the corporate veil to hold Calderón personally liable for Pasión's negligence.

In opposition, the plaintiffs made both procedural and substantive arguments. They first took the position that the defendants' Rule 50(b) motion was dead on arrival because the defendants (1) failed to "raise a proper Rule 50(a) insufficiency of the evidence motion before the case was submitted to the jury," and (2) did not object to the jury instructions after the court gave them. Accordingly, the plaintiffs said the arguments had been procedurally defaulted and that the judge could summarily deny the defendants' motion. They also reiterated the joint venture and apparent authority arguments they'd raised at summary judgment, only this time they referred to the evidence that came in at trial.

The district court denied the defendants' post-trial motion in a docket order without explanation. Because multiple legal theories had been advanced and were before the court, the district court's conclusions of law "are not discernible" from the docket order. Francis, 81 F.3d at 7. It is akin to a "margin order . . . not amenable to reliable appellate review under any standard." Id.

Moreover, though these arguments had been before the court previously, the limited record submitted for this appeal does not disclose what the judge thought about them before or at

trial.[31]   A further wrinkle is added by the plaintiffs' post-verdict argument that the defendants' renewed motion for judgment as a matter of law was procedurally defaulted and should be summarily denied.   The parties have not provided us with a transcript of the judge's oral instructions to the jury or of any post-charge discussion with the parties.   So we cannot tell whether or not the plaintiffs' representation that the defendants failed to object to the given instructions is correct.   In sum, the record on appeal sheds no light on whether the district judge relied on procedural or substantive grounds (or some combination) in denying the defense motion.[32]

---

[31] Except that the judge concluded at the summary judgment stage that at least one of those theories presented a jury question.

[32] The plaintiffs' appellate brief is not particularly helpful either, as it focuses almost entirely on their view that the district court struck the statute of limitations defense as a sanction.   In fact, they only briefly touch upon Madrigal, Inc.'s and Calderón's arguments, and even then their treatment of the issue does not extend beyond their observation that these parties are liable to them because the jury found the Release to be invalid.   Such superficial treatment of the issue runs the risk of our finding it waived for inadequate briefing on appeal.   See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).   Here, however, the defendants have not asked us to find that the plaintiffs waived any arguments with respect to Madrigal, Inc.'s and Calderón's liability.   So they have, essentially, waived their waiver argument.   This, combined with the fact that we are already remanding on the statute of limitations defense, counsels against a finding of appellate waiver and allowing each side to present to the district court any argument it sees fit.

As with the statute of limitations issue, we will not rely on guesswork as the jumping-off point for our analysis. Prudence dictates that we remand for the judge to explain the grounds on which he denied the defendants' Rule 50(b) motion.

## CONCLUSION

Based on the foregoing, the district court's denial of the defendants' renewed motion for judgment as a matter of law is **vacated** and this matter is **remanded** for further proceedings consistent with this opinion. The district court is instructed to explain whether it barred the statute of limitations defense as a sanction or a matter of law (or, perhaps, on some other basis) and explain its reasoning for doing so. It should also set forth its reasoning with respect to Calderón's and Madrigal, Inc.'s liability. The district court, which may order briefing or convene a hearing on any remanded issue if deemed appropriate, is hereby instructed to render its decision on the defendants' renewed motion for judgment as a matter of law within ninety (90) days from the date of this opinion. We retain appellate jurisdiction.